UNITED STATES, Appellee,

v.

Paul C. PORTER, Defendant, Appellant.

UNITED STATES, Appellee,

v.

Walter G. BAKER,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Frederick L. HEARN,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Larry RESERVITZ,
Defendant, Appellant.

Nos. 83–1791 to 83–1793 and 83–1806.

United States Court of Appeals,
First Circuit.

Heard Aug. 6, 1984.

Decided May 14, 1985.

Levin H. Campbell, Chief Judge, filed
dubitante opinion.

Morris M. Goldings, Boston, Mass., with whom Richard S. Jacobs, and Mahoney, Hawkes & Goldings, Boston, Mass., were on brief, for defendant, appellant Paul C. Porter.

Willie Davis, Boston, Mass., for defendant, appellant Larry Reservitz.

David E. Lewis, Boston, Mass., with whom Jeffrey Denner, Boston, Mass., was

on brief, for defendant, appellant Walter Baker.

Paul V. Buckley, Boston, Mass., on brief, for defendant, appellant Frederick L. Hearn.

Sydney Hanlon, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

PEREZ–GIMENEZ, District Judge.

Before us are the appeals of several defendants convicted by jury trial of participating in a conspiracy to possess with intent to distribute marijuana. Instead of writing separate opinions, we consolidate them and deal with all the claims raised by appellants in one opinion. We will first set forth the facts upon which many of the defendants' claims depend with a more detailed description of the facts, when necessary, as to each defendant. We then consider the claims raised by each defendant.

### The Facts

In mid-October 1982, Ernesto González, informant for the Washington, D.C., District Office of the Federal Drug Enforcement Administration (hereinafter referred to as DEA), called defendant-appellant Walter Baker to persuade him to purchase or find purchasers for approximately 10,000 pounds of marijuana. Between mid-October and mid-December numerous calls were made by González to defendant Baker from the DEA Office. During the latter period, DEA Special Agents Andrew Sherbine and Michael Pavlick participated in some of the calls in their roles as drug dealers. Four of these joint calls were recorded by the agents and the recordings were introduced as exhibits at the trial. On December 16, 1982, DEA agents Pavlick and Sherbine arrived in Boston with the informant Ernesto González. On that same day the

---

* Of The District of Puerto Rico, sitting by designation.

informant introduced the two agents to defendant-appellant Baker. They posed as the leaders of a drug organization with access to approximately 10,000 pounds of marijuana secreted in the northern Virginia area and to whom González owed a substantial sum of money for other drug related transactions.

Baker travelled to Norfolk, Virginia, to view the marijuana, which DEA agents had seized in a prior case. In February of 1983, Sherbine and Pavlick came to Boston with the bales of marijuana. Pavlick met with Baker at the Bostonian Hotel on February 23, 1983, where Baker informed him that he was going to meet with an expert in marijuana quality. Later, Baker was observed meeting with defendant-appellant Paul Porter. Porter accompanied Baker to the Bostonian Hotel. Agents Pavlick and Sherbine agreed that they would provide Baker with a sample of the marijuana. Pavlick and Sherbine, in a car containing one bale of marijuana, followed Porter and Baker to Water Street. Sherbine and Baker cut approximately eight ounces of marijuana out of the bale, and Baker took it back to Porter's car and handed it to him. Then, Porter drove the car with Baker to Raymond's Restaurant, in Brookline, where they met with defendant-appellant Larry Reservitz. The three got into Reservitz's car and travelled to Porter's office. Porter went inside and later they all went into Baker's apartment. Shortly before 9:00 P.M. they went to City Hall Plaza, in Boston. Reservitz got out of the car carrying a brown bag and went into Werner's Restaurant, on City Hall Plaza. In the restaurant he met defendant-appellant Frederick Hearn and left the brown bag with Hearn. A short time later Hearn left and put the bag in the trunk of his car. At approximately 9:30 P.M. Baker spoke to Pavlick and said that the samples had been given and that the transaction would occur the following day.

The next day, February 24, Baker met with Pavlick a number of times. At one point Baker sent defendant David Goldenberg, who was acquitted at trial, to pick up a second sample.

The following morning Pavlick and Sherbine met with Baker and Reservitz. Baker told the agents that he had seen the $200,-000 in cash which the group would provide as down payment. Reservitz told Pavlick to send the truck with marijuana to the Howard Johnson's on the Southeast Expressway. Reservitz, Baker, Pavlick and Sherbine, travelling in Reservitz's car, met the truck there and led it to Puritan Mall, in Dorchester.

At the Puritan Mall, Reservitz met with defendant Hobart Willis, who was acquitted at trial, and told Pavlick to go with Willis to see the money. Pavlick got into a car driven by Willis with Hearn as a passenger. Willis and Hearn then drove Pavlick a short distance away and parked next to Hearn's car. From the trunk of the car Hearn produced $200,000 in cash in two shopping bags. Pavlick gave the arrest signal and the agents put defendants Reservitz, Baker, Willis and Hearn under arrest. Porter and Goldenberg were arrested later on John Doe warrants.

Five of the defendants were indicted by a grand jury on March 9, 1983, on two counts. The first count charged all five with conspiracy to possess with intent to distribute more than 1,000 pounds of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(6). The second count charged Baker, Porter, and Reservitz with distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1). On March 16, the grand jury returned a superseding indictment adding defendant Goldenberg to the conspiracy count. The six defendants were tried together to a jury in the United States District Court. On September 2, 1983, the jury found Baker guilty as charged; Porter, Reservitz and Hearn were found guilty of the first count; and the jury acquitted Goldenberg and Willis.

### 1. *Porter's Suppression Claim*

On appeal, Porter challenges the denial of his motion to suppress certain post-arrest statements made to DEA agents.

On February 28, 1983, Special Agents Fencer, Pasquarello, and Martin, of the DEA, went to the business office of the defendant-appellant Paul C. Porter. Appellant, who was present at his office, was arrested by the agents. After informing appellant of his *Miranda* rights, the DEA agents transported him to the DEA headquarters at the JFK Building, in Boston. Agents then proceeded to strip-search appellant. He then was brought to a small interrogation room. He was again informed of his *Miranda* rights and asked if he would like to make a phone call. According to appellant, he made two phone calls, one to the information operator to get the number for his attorney, and one to the attorney's office. At the suppression hearing, the government and appellant entered into a stipulation, in lieu of the testimony of the attorney, that when he returned to his office that day he found a call slip from Paul Porter. After appellant made his phone calls, DEA Group Supervisor Garidotto entered the interrogation room. He asked the agents if appellant had been advised of his constitutional rights and if he understood his rights. They answered in the affirmative. Garidotto then asked appellant if he understood his rights, and he answered that he did. Supervisor Garidotto then asked if appellant knew why he was arrested and proceeded to interrogate him. Porter then made the inculpatory statements.

Appellant moved to suppress the post-arrest statement on the grounds that he "did not knowingly and intelligently waive his right to remain silent, his right to obtain advice of counsel prior to submitting to questioning, and his right to have an attorney present during questioning." After an evidentiary hearing, the trial court denied the motion because it found Porter's statement to be voluntary and intelligently made. Agent Fencer testified as to Porter's inculpatory statements at trial.

The issue before us is whether Porter's post-arrest statements were obtained in violation of his constitutional right to have counsel present during custodial interrogation. We find that Porter's incriminatory statements were obtained in violation of his constitutional rights, and we must therefore reverse the district court.

An accused person in custody has the absolute right to remain silent and to have an attorney present during any questioning. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Fifth Amendment requires the exclusion of any statement made by an accused during custodial interrogation unless he has been advised of his right to remain silent and to have an attorney present during questioning and he has voluntarily waived those rights. The Supreme Court held in *Edwards v. Arizona*, 451 U.S. 477, 484–405, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378 (1981) that once an accused has invoked the right to counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police. Furthermore, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.*, at 484, 101 S.Ct., at 1885.

Porter alleges that he asserted his right to counsel by making a telephone call to his attorney in the presence of DEA Agent Pasquarello and that having exercised his right to counsel, the custodial interrogation had to cease and could only resume at his own initiative. The government contends that the accused waived his right to have counsel present during the interrogation.

The district judge specifically found as a fact that Porter made two phone calls, one to the operator seeking information and the other to his attorney's office. In *Miranda*, 338 U.S. at 444–45, 86 S.Ct. at 1612–13, the Supreme Court indicated that the assertion of the right to counsel could be made "in any manner and at any stage of the process." Porter's attempt to contact his attorney constituted an exercise of his right to counsel. *See, e.g., Silva v.*

*Estelle,* 672 F.2d 457 (5th Cir.1982); *United States v. Lilla,* 534 F.Supp. 1247 (N.D. N.Y.1982); *Gorel v. United States,* 531 F.Supp. 368 (S.D.Texas 1981).

The constitutionality of the DEA agents' conduct in this case has to be evaluated under the prophylactic rule established in *Edwards.* The court below found that Porter's incriminatory statements were voluntary and intelligently made; that he knew of his right to counsel and of his right to stop the questioning at any time. The test enunciated by *Edwards* is not whether the incriminatory statements were made voluntarily and intelligently, but whether once the accused invoked his right to counsel, he has initiated further communications on the subject matter of the investigation, and if he has done so, whether he knowingly and intelligently waived his right to counsel. *Edwards, supra; Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). *See, e.g., Watkins v. Callahan,* 724 F.2d 1038 (1st Cir.1984) (appellant waived his previously invoked right to counsel by initiating the post telephone call conversation).

Porter's attempt to contact his attorney was apparently disregarded by Agent Pasquarello, and, thus, Supervisor Garidotto was not advised that Porter had asserted his right to counsel.[1] However, "once a suspect has invoked the right to counsel, knowledge of that request is imparted to all law enforcement officers who subsequently deal with the suspect." *United States v. Scalf,* 708 F.2d 1540, 1544 (10th Cir.1983). *See also, United States v. Downing, supra; White v. Finkbeiner,* 687 F.2d 885, 887, n. 9 (7th Cir.1982), *cert. grant. & judgm. vac. for other reasons, Fairman v. White,* — U.S. —, 104 S.Ct. 1433, 79 L.Ed.2d 756 (1984).

■ The fact that Garidotto asked the accused if he understood his rights did not establish a waiver of Porter's right to counsel. Merely asking the accused whether he

understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. *Miranda* requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them. *United States v. Christian,* 571 F.2d 64 (1st Cir.1978).

■ Any statements taken after Porter had asserted his right to counsel and Garidotto had initiated further interrogation, cannot be the result of waiver but must be presumed a product of compulsion, subtle or otherwise. *See, United States v. Downing, supra; United States v. Priest,* 409 F.2d 491 (5th Cir.1969). Appellant's incriminatory statements were obtained in violation of his constitutional rights and should not have been admitted at trial.

■ When trial error infringes on constitutional rights we have previously held that we must reverse unless we find that the error was harmless beyond a reasonable doubt. *United States v. Christian,* 571 F.2d at 69–70. Such doubt can be raised by a "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. State of Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *Roy v. Hall,* 521 F.2d 120, 123 (1st Cir.1975). Porter's incriminatory statements were introduced at trial through the testimony of Agent Fencer. Although there was other evidence against appellant, we cannot say that the statements were not a contributing factor to the conviction. Porter's conviction must be reversed.

2. *Baker's Claim of Outrageous Government Conduct*

Defendant-appellant Walter Baker does not argue entrapment on this appeal. What Baker claims is that the trial court erred by failing to grant his motion to

---

**1.** As we stated in *United States v. Downing,* 665 F.2d 404 (1st Cir.1981), "[l]aw enforcement officers working in teams should be discouraged from violating the accused's constitutional rights by failing to ascertain or advise one another whether those rights had been previously asserted." *Id.* at 407.

dismiss the indictment because of the unreasonable conduct on the part of government agents which violated his right to due process of law under the Fifth Amendment.

The Supreme Court has left open the possibility that "outrageous" government involvement in a crime may violate a defendant's right to due process despite his predisposition to commit the crime. *Hampton v. United States*, 425 U.S. 484, 491–495, 96 S.Ct. 1646, 1650–1652, 48 L.Ed.2d 113 (1976) (Powell, J., joined by Blackman, J., concurring in the judgment); *Id.*, at 495–500, 96 S.Ct. at 1652–1655 (Brennan, J., dissenting, joined by Stewart and Marshall, J.J.); *United States v. Rodriguez Ramos*, 704 F.2d 17 (1st Cir.1983), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); *United States v. Parisi*, 674 F.2d 126 (1st Cir.1982); *United States v. Caron*, 615 F.2d 920, 921 (1st Cir.1980); *United States v. Johnson*, 565 F.2d 179, 181, 182 (1st Cir.1977), *cert. denied*, 434 U.S. 1075, 98 S.Ct. 1264, 55 L.Ed.2d 780 (1978). However, Justice Powell emphasized in his concurrence that the "[p]olice overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction", noting that "[t]his would be especially difficult to show with respect to contraband offenses, which are so difficult to detect in absence of undercover Government involvement." *Hampton*, 425 U.S. at 495, n. 7, 96 S.Ct. at 1653, n. 7.

Baker alleges that González called him in mid-October 1982 claiming that he owed fifty or sixty thousand dollars to drug dealers and requesting Baker's help in finding buyers for the dealers' marijuana in Boston. Baker further alleges that he refused to help González but that González continued to call him with increased frequency complaining that he feared for his life and the safety of his wife and children because of the debt he owed the drug dealers from Miami. According to Baker's testimony, González wanted Baker to pose as a big drug dealer pretending to be interested in purchasing marijuana to give him time to search for real buyers in Boston. Baker testified that on November 1982 González once again called him and that this time he threatened that if Baker refused to act the part of a big drug dealer, that González would tell the drug dealers that Baker was the one who owed him the fifty thousand dollars he could not pay to the dealers.

Baker contends that due to the threatening conduct of the DEA informant he had no choice but to become involved in the criminal enterprise, either in the dangerous role of a dealer refusing to pay a debt or the less dangerous role of a potential buyer.

The question to be answered is whether the government's inducement of defendant to commit the crime could be held so outrageous so as to preclude prosecution on the grounds of due process. *United States v. Caron, supra* at 921. We must bear in mind that this case is a drug case where greater government involvement is permissible because of the seriousness of the narcotics traffic and the difficulty of apprehending offenders. *Hampton, supra*, 425 U.S. at 495, n. 7, 96 S.Ct. at 1653, n. 7; *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *United States v. Parisi, supra*, at 127.

There is no evidence that Baker was threatened with bodily harm when he met for the first time with informant González and agents Pavlick and Sherbine on December 1982, nor that he was under a continous threat during the time the transaction took place. *See, e.g., Greene v. United States*, 454 F.2d 783 (9th Cir.1971) (government conceded that its agent used veiled threats to induce crime); *United States v. Belzer*, 743 F.2d 1213, 1217 (7th Cir.1984), *cert. denied, Clements v. United States*, — U.S. ——, 105 S.Ct. 788, 83 L.Ed.2d 781 (1985) (if Secret Service agents through the undercover informant had made a *credible* threat of violence toward the defendant or his family members, that fact would have to be considered in assessing defendant's outrageous conduct claim).

In *United States v. Caron*, 615 F.2d 920 (1st Cir.1980), a case similar to the one at bar, the defendant contended that he

should have received a directed verdict of acquittal because of the government's repeated badgering, ignoring his repeated assertions that he wanted nothing to do with the illegal firearm activity. The Court decided that defendant's testimony as to the alleged badgering and protestations that he wanted nothing to do with the illegal activity was contradicted by the government agent's testimony.

Likewise, Baker's testimony was contradicted by the testimony of Agents Sherbine and Pavlick.[2] The record indicates that the trial judge explicitly stated that he did not believe Baker's testimony.[3] The court could properly consider the incredibility of Baker's story, *United States v. Johnson, supra,* his failure to call the informant González to testify for corroboration, and the government's contrary offer of proof. *See, e.g., United States v. Russo,* 540 F.2d 1152 (1st Cir.1976), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976).

■ There was ample evidence that Baker actively and eagerly conspired with government agents and the informant to distribute the contraband substance in Boston. Although the drug was furnished by the government, Baker relied on his own sources to procure the potential buyers with the $200,000 requested as down payment for the drug transaction.[4] We do find that the government's conduct was not more outrageous than that which was

found not to violate defendant's constitutional rights in *Hampton, supra* (government both supplied and purchased contraband substance). *See, e.g., United States v. Johnson, supra,* (defendant sold cocaine in response to agent's demands and threats persisting over a period of months); *United States v. Romano,* 706 F.2d 370 (2d Cir.1983) (drug transaction initiated by government informant and government supplied the drugs).

### 3. *Baker's Sixth Amendment Right to Confrontation*

Appellant also argues that the trial court committed reversible error by restricting defendant's cross-examination of the government's principal witness. Baker alleges that the limited examination permitted by the trial court of Agent Sherbine about the informant, his family and the incentives offered to him by the government abridged his sixth amendment right to confrontation.

■ The confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial. *United States v. Coven,* 662 F.2d 162, 170 (2d Cir.1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982); *Mcallister v. Brown,* 555 F.2d 1277 (5th Cir.1977); *Houser v. United States,* 508 F.2d 509, 518 (8th Cir.1974); *Turnbough v. Wyrick,* 420 F.Supp. 588 (E.D.Mo.

---

2. DEA informant González was made available to the defense but was not called to testify.

3. Judge McNaught said:
   I will state, if it's any consolation, other than Mr. Baker, I base none of my findings on statements of Mr. Baker. Obviously, I wouldn't do that. I didn't believe the man anyway. I thought he was lying on the stand through his teeth. . . . I didn't credit Mr. Baker with anything while he was on the witness stand except perjury.

4. Baker relies heavily on *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978), which is the only court of appeals decision since *Hampton* to vacate a conviction on the basis of outrageous conduct. *Twigg* is distinguishable from the case at bar because the Drug Enforcement Agency was excessively and impermissibly involved in the manufacture of methamphetamine. The government agents originated the idea of estab-

lishing the laboratory of illegal methamphetamine, and the informant was "completely in charge" of the production process and supplied all expertise, *United States v. Belzer,* 743 F.2d 1213, at 1218 n. 5 (7th Cir.1984). Appellant Baker, however, was clearly capable of conspiring to purchase and distribute the marijuana without the active aid and supervision of the government. Additionally, the Third Circuit, in *United States v. Beverly,* 723 F.2d 11, 12 (3rd Cir.1983), has stated that the majority in *Twigg* relied on *United States v. West,* 511 F.2d 1083 (3rd Cir.1975), which according to their view has been limited by *Hampton, supra,* and *United States v. Jannotti,* 673 F.2d 578 (3rd Cir.), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982), *appeal after remand,* 729 F.2d 213 (3rd Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984).

1976), *affirmed,* 551 F.2d 202 (8th Cir. 1977), *cert. denied,* 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977). Defendant-appellant chose not to call the informant as a witness when he was available. *See, e.g., United States v. Vila,* 599 F.2d 21 (2d Cir.1979), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979). Moreover, the government was under no obligation to call the informant as a witness at trial, and a defendant has no right to confront an informant who provides no evidence at trial. *United States v. Francesco,* 725 F.2d 817, 822 (1st Cir.1984); *Cooper v. State of Cal.,* 386 U.S. 58, 62, n. 2, 87 S.Ct. 788, 791, n. 2, 17 L.Ed.2d 730 (1967), *reh. denied,* 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 (1967).

█ The limited information alleged by Baker to have been provided by the government about the incentives offered to the informant[5] did not in any way infringe appellant's right to confront the informant since he was not called as a witness. *See, United States v. Blessing,* 727 F.2d 353 (5th Cir.1984), *cert. denied, Rodriguez v. United States,* —— U.S. ——, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985).

### 4. *Larry Reservitz's Claims*

### A. *Failure to comply with Federal Rule of Criminal Procedure 30*

Larry Reservitz claims that the district court failed to comply with Fed.R.Crim.P. 30, which requires the court to "inform counsel of its proposed action upon the requests [for jury instructions] *prior* to their arguments to the jury...." (emphasis added). Reservitz alleges that his theory of defense was prejudicially affected when the court rejected the same.

The underlying facts concerning Reservitz's objections to jury instructions are as follows: On August 29, 1984, the day before closing arguments began, defendant-appellant Reservitz submitted a single "Supplemental Request for Instructions to the Jury" supplementing thirty-three other written requests which he had filed before. The supplemental request concerned Reservitz's procuring agent theory. As described by Reservitz, "[i]n essence a procuring agent theory is a defendant, and in this particular case Larry Reservitz is procuring a buyer for marijuana and he acted solely as the agent for the person who was selling the marijuana and that person was a government agent, then Larry Reservitz has not violated the federal narcotic law."

On August 30, 1984, the trial court held a charge conference where the court and the parties discussed the proposed jury instructions and the court indicated the general direction it would take. Near the end of the conference the following ensued:

Mr. Davis: There is something else. You forget me altogether, Judge. You have never commented on my request for instructions.

The Court: They were so beautifully done that I used these as an outline.

Mr. Davis: Then I trust you will give it as I requested.

The Court: If at the conclusion I have forgotten somethin (sic) or if you think I have done something wrong, I'll not be offended to have you tell me so.

Mr. Davis: I rose only because in my argument I want to use my request.

The Court: You mean rather than use my language?

Mr. Davis: No, sir, I'd rather use yours if you are going to give it as I requested. But I don't want to be in the position of arguing something that the court doesn't think I should argue.

The Court: I have no quarrel with the gist of what anybody has submitted me.

At closing arguments Reservitz's attorney stated to the jury that the judge would instruct them that if the evidence showed that Reservitz was an agent for the seller, the jury would have to find him not guilty. The United States Attorney objected and the court sustained the objection because

---

**5.** The testimony of Agent Sherbine revealed the following: González's status as a paid informant, the amount he was paid, his arrest in Texas on drug charges, and DEA's efforts to help him with Texas authorities.

there was no evidentiary basis for the procuring agent theory and so informed the jury. Counsel for Reservitz made timely objection to the failure to give the requested supplemental instruction. The objection was noted by the court. After the district judge gave the instructions to the jury, Reservitz moved for a mistrial based upon the failure of the court to follow F.R. Crim.P. 30.

■ .The court's apparent failure to advise Reservitz's counsel that he would not give the requested instruction requires reversal of the conviction only if counsel's closing argument was prejudicially affected thereby. *United States v. Smith*, 629 F.2d 650 (10th Cir.1980), *cert. denied*, 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980); *United States v. Lyles*, 593 F.2d 182 (2d Cir.1979), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Harvill*, 501 F.2d 295 (9th Cir.1974).

Reservitz argues that the court prejudiced his defense by permitting his attorney to rely during the beginning of summation on the court's unfulfilled indications regarding its intended jury charge as to the supplemental request. Reservitz contends that had the court complied with Rule 30, his attorney would not have made statements which later the jury was told were erroneous. During summation the court cautioned the jury, with attorney Davis's acquiescence, to take the law from the court and not from counsel. Under these circumstances we fail to find any basis on which to conclude that the counsel's credibility in the eyes of the jury was compromised by the tardy revision of the requested instruction. *See, e.g., United States v. Lyles, supra.* Davis does not even argue how he would have significantly altered his summation had he known that the court was going to deny his supplemental request. After the court sustained the government's objection, Davis's argument was not restricted in any way. *See, United States v. Scheffer*, 463 F.2d 567, 573–74 (5th Cir.1972), *cert. denied*, 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972). Reser-

vitz has failed to carry his burden of demonstrating prejudice resulting from the trial court's departure from Rule 30.

Furthermore, the omission of the requested instruction was not fundamentally prejudicial to the rights of the defendant because the requested instruction was not appropriate in form and substance. As this Court has previously stated: "In general, a defendant is entitled to an instruction on his theory of the case if (a) there is evidence to support it, and (b) it is appropriate in form and substance. *United States v. Leach*, 427 F.2d 1107, 1112–13 (1st Cir. 1970) [*cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970)]." *United States v. Zeuli*, 725 F.2d 813, 817 (1st Cir.1984).

While a defendant could avoid being convicted under former section 4705 of Title 26, United States Code, making it unlawful to sell, barter, exchange, or give away narcotic drugs by presenting evidence to the effect that, in a given sale in which he was an intermediary, he was acting as an agent for the ultimate purchaser rather than a seller himself, *United States v. MacDonald*, 455 F.2d 1259, 1262 (1st Cir.), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2073, 32 L.Ed.2d 350 (1972), the "purchasing agent" theory is not a valid defense under the broader provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, et seq., which replaced former section 4705 by making it unlawful to distribute or possess with the intent to distribute a controlled substance. *United States v. Bailey*, 505 F.2d 417 (D.C. Cir.1974), *cert. denied, Sloan v. United States*, 420 U.S. 961, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975).

Reservitz was charged with conspiracy to possess with intent to distribute and with distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1). 21 U.S.C. § 801, et seq., makes distribution an offense, § 841(a)(1), and defines "distribute" to mean "to deliver" (other than by administering or dispensing) a "controlled substance." § 802(11). Deliver is defined as "the actual, constructive, or attempted transfer of a controlled substance, whether

or not there exists an agency relationship." § 802(8).

■ We agree with the other circuits which have addressed the issue and have held that the "procuring agent" instruction is not applicable to prosecutions charging unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). *See, United States v. Márquez*, 511 F.2d 62 (10th Cir.1975); *United States v. Pierce*, 498 F.2d 712, 713 (D.C.Cir.1974); *United States v. Miller*, 483 F.2d 61, 62 (5th Cir. 1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 919, 39 L.Ed.2d 112 *reh. denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974); *United States v. Masullo*, 489 F.2d 217, 220–221 (2d Cir.1973); *United States v. Pruitt*, 487 F.2d 1241, 1243–1245 (8th Cir. 1973); *United States v. Hernández*, 480 F.2d 1044, 1046–1047 (9th Cir.1973).

### B. *The Taking of Notes by Jurors*

■ We now consider Reservitz's remaining objections.

Reservitz contends that the trial court erred in allowing the jurors to take notes during opening statements, closing statements, and charge to the jury. The decision to allow the jury to take notes and use them during deliberations is a matter within the discretion of the trial court. Absent abuse of discretion, the action of the trial court will not be disturbed. *United States v. Rhodes*, 631 F.2d 43 (5th Cir.1980); *United States v. Johnson*, 584 F.2d 148 (6th Cir.1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1240, 59 L.Ed.2d 469 (1979); *United States v. Maclean*, 578 F.2d 64 (3rd Cir. 1978); *United States v. Anthony*, 565 F.2d 533 (8th Cir.1977), *cert. denied*, 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978); *United States v. Riebold*, 557 F.2d 697 (10th Cir.1977), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *United States v. Bertolotti*, 529 F.2d 149 (2d Cir. 1975); *United States v. Braverman*, 522 F.2d 218 (7th Cir.1975), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); *Toles v. United States*, 308 F.2d 590 (9th Cir.1962), *cert. denied*, 375 U.S. 836, 84 S.Ct. 79, 11 L.Ed.2d 66 (1963), *reh.*

*denied*, 375 U.S. 949, 84 S.Ct. 353, 11 L.Ed.2d 280 (1963); *Goodloe v. United States*, 188 F.2d 621 (D.C.Cir.1950), *cert. denied*, 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619 (1951); *Chicago & N.W. Ry. v. Kelly*, 84 F.2d 569 (8th Cir.1936).

■ Reservitz has not shown how the trial judge abused his discretion. The record shows the painstaking care the judge displayed when he instructed the jurors on their note-taking. No error is manifest.

### C. *Severance and Antagonistic Defenses*

■ Reservitz next asserts that the district court committed error when it failed to sever Reservitz's trial from Baker's because their defenses were antagonistic. The grant or denial of severance is clearly within the sound discretion of the trial court and its action on such a motion will be overturned only where there has been a clear abuse of such discretion. *United States v. Davis*, 623 F.2d 188, 194 (1st Cir.1980). The burden is upon appellant Reservitz to make a strong showing of prejudice in order to show that a denial of his severance motion constituted an abuse of discretion. *United States v. Bautista*, 731 F.2d 97 (1st Cir.1984); *United States v. Arruda*, 715 F.2d 671 (1st Cir.1983); *United States v. Lochan*, 674 F.2d 960, 967 (1st Cir.1982). Reservitz has made no such showing.

■ The fact that two defendants assert antagonistic defenses does not *per se* require severance even if the defendants are hostile or attempt to cast the blame on each other. *United States v. Davis, supra*, at 194, *quoting United States v. Becker*, 585 F.2d 703, 707 (4th Cir.1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979). To obtain severance on the grounds of conflicting defenses Reservitz has to demonstrate that "the conflict is so prejudicial and the defenses are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v.*

*Talavera,* 668 F.2d 625, 630 (1st Cir.1982), *cert. denied, Pena v. United States,* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982); *United States v. Luna,* 585 F.2d 1, 5 (1st Cir.1978), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

Reservitz contends that he was entitled to severance because the entrapment defense offered by Baker was antagonistic and mutually exclusive to his defense.[6] Other circuits have held that "[a] co-defendant's reliance on entrapment does not of itself justify reversing a refusal to sever but rather the defenses must be antagonistic to the point of being mutually exclusive." *United States v. Vadino,* 680 F.2d 1329, 1335 (11th Cir.1982), 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983) (*quoting, United States v. Salomon,* 609 F.2d 1172, 1173 (5th Cir.1980) ), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983). *See, e.g., United States v. Mulherin,* 710 F.2d 731 (11th Cir.1983), *cert. denied, Hornsby v. United States,* — U.S. ——, 104 S.Ct. 1305, 79 L.Ed.2d 703 (1984); *United States v. Moschiano,* 695 F.2d 236 (7th Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983); *United States v. Lentz,* 624 F.2d 1280 (5th Cir.1980), *cert. denied,* 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981).

▮▮▮ Reservitz's theory is that he was prejudiced by the admission into evidence of the recorded telephone conversations of the DEA agents with Baker during December 1982, presented by the government in order to disprove entrapment. Reservitz argues that the jury could have inferred that the telephone conversations of drug transactions was evidence that Baker had engaged in drug transactions in the past, and that Reservitz, who is alleged to have participated in a conspiracy with Baker to distribute drugs, might appear to

the jurors to have been one of the associates mentioned by Baker in the conversations. In these circumstances we find that any prejudice to Reservitz resulting from the telephone conversations is purely speculative,[7] and "[s]peculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance." *United States v. Becker,* 585 F.2d 703, 707 (4th Cir.1978), *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979). *See, United States v. Bautista, supra,* at 100. We believe that the jury was capable of following the trial court's instruction that they were to consider the evidence against each defendant separately. *See, United States v. Bautista, supra, citing, United States v. Smolar,* 557 F.2d 13, 21 (1st Cir.1977), *cert. denied,* 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977). Appropriate limiting instructions to the jury are an adequate safeguard against evidentiary spillover. *United States v. Moschiano, supra.* It is significant that the jury returned a verdict finding Reservitz guilty only on Count One, the conspiracy count, while finding Baker guilty on both counts, the conspiracy and distributing counts. Such a discriminating verdict has been found by the Seventh Circuit to be some indication that the jury was able to and did consider each defendant individually. *United States v. Shelton,* 669 F.2d 446, 461 (7th Cir.1982), *cert. denied, Bledsoe v. U.S.,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982); *United States v. Papia,* 560 F.2d 827, 837 (7th Cir.1977).

For all of the above reasons, we conclude that the district court did not abuse its discretion when it denied Reservitz's motion for severance.

▮▮▮ The other argument raised by Reservitz is that in order for Baker to prove

**6.** Reservitz does not explain the defense which is antagonistic to Baker's entrapment defense. However, one of the core defenses used by Reservitz was outrageous government conduct. The assertion by Baker of his entrapment defense was not of itself mutually exclusive or irreconciliable with the defense presented by Reservitz. In fact, the defense of outrageous government conduct is akin to entrapment, not

antagonistic. *See United States v. Malherin, supra,* at 736.

**7.** Baker testified that he did not know Reservitz at the time of the conversations and that he had only met Reservitz a short time before the charged conspiracy dates.

his defense of entrapment, which allegedly was antagonistic to Reservitz's defense, Baker would take the stand and that once Reservitz knew Baker would take the stand, he had to do likewise; and, therefore, Reservitz's right under the Fifth Amendment not to be compelled to incriminate himself was infringed. To a similar Fifth Amendment argument, the Seventh Circuit ruled that the fact that co-defendant's defense was allegedly so antagonistic to defendant's that once defendant knew co-defendant would take the stand defendant had to do likewise, did not entitle the defendant to severance of trial from the trial of the co-defendant because of his Fifth Amendment right not to be compelled to incriminate himself. *United States v. Shively*, 715 F.2d 260 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984).

### D.  *Refusal to Instruct Jury on Theories of the Defense*

Reservitz requested the court to instruct the jury on two theories of defense. The "procuring agent theory" and the "outrageous government conduct theory". The court's refusal to do so was correct.

The refusal to instruct the jury on the "procuring agent theory" was already dealt with, so we will only consider the refusal to instruct on the "outrageous government conduct theory".

Reservitz argues that the outrageous government conduct theory should have been submitted to the jury. *United States v. Johnson*, 565 F.2d 179, 181 (1st Cir. 1977), *cert. denied*, 434 U.S. 1075, 98 S.Ct. 1264, 55 L.Ed.2d 780 (1978), held that it was the court's province to decide whether defendant's theory of defense was such that, if believed, it would fall into the exceptional category where fundamental fairness requires the dismissal of an indictment because of outrageous police conduct. We ruled that "[w]hatever its possible role

in resolving contested factual issues raised by an entrapment defense, the jury is not equipped and should not be permitted to speculate on whether particular facts do or do not amount to fundamental fairness. We hold that the court properly rejected the proposed instruction." *Id.*, at 181–182. The court below properly denied appellant's request that the jury be instructed as to the "outrageous government conduct theory".

### 5.  *Hearn's Assignment of Errors*

### A.  *Severance*

We now consider Hearn's assignment of errors. First, Hearn alleges that the trial court erred in denying his motion for severance. One of the reasons given by Hearn for requesting the severance was because his defense was antagonistic to Baker's entrapment defense. This contention is without merit since Hearn does not even state which defense is antagonistic to Baker's entrapment defense.

■ Hearn further contends that he was prejudiced by the admissibility of evidence of Baker's prior drug dealings. Appellant Hearn makes reference to Rule 404(b) of the Federal Rules of Evidence [8] which governs the admissibility of evidence pertaining to other crimes committed by a defendant. Other crimes evidence is relevant to the issue of intent. *United States v. Rivera Sola*, 713 F.2d 866 (1st Cir.1983). The district court admitted the evidence of Baker's prior drug dealings so that the government could disprove Baker's defense of entrapment. The evidence was not presented to show knowledge or intent to commit the offenses in question for Baker's knowledge or intent was not a contested issue in this case. *See, e.g., United States v. Franceso, supra; United States v. Rivera Sola, supra.*

■ There was no error in the trial court's allowing Baker's prior drug deal-

---

**8.** Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

ings to be admitted into evidence against Baker alone, nor was there any error in not severing Hearn's trial because of the "spill over" prejudicial effect of that evidence in his case. *See, United States v. Hernández*, 715 F.2d 548, 551 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984); *United States v. Hines,* 717 F.2d 1481, 1489 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *United States v. Payden,* 536 F.2d 541, 543 (2d Cir.1976), *cert. denied,* 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976). The jurors were properly instructed to consider said evidence only against Baker and for the specific purpose for which it was presented.

### B. *Sufficiency of the Evidence to Sustain the Conviction of Hearn*

Hearn next argues that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to sustain his conviction. Appellant Hearn alleges that the government failed to prove beyond a reasonable doubt the requisite intent to agree and to commit the substantive offense charged.

▇ In reviewing the denial of a motion for judgment of acquittal, the court must consider the evidence as a whole taken in the light most favorable to the government, together with all legitimate inferences to be drawn therefrom to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. George,* 752 F.2d 749, 752 (1st Cir.1985); *United States v. Smith,* 680 F.2d 255 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983); *United States v. Pappas,* 611 F.2d 399 (1st Cir.1979); *United States v. Leach,* 427 F.2d 1107, 1111 (1st Cir.1970), *cert. denied,* 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970).

▇ The essential element in a conspiracy count is the existence of an agreement.

*United States v. Smith,* 680 F.2d 255, 259 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983), which can be inferred from circumstantial evidence. *United States v. DeLutis,* 722 F.2d 902 (1st Cir.1983). Hearn argues that there is no evidence that he in any way participated in the conspiracy and that the government's evidence does not show any further involvement in the conspiracy than his mere association with persons involved in criminal activities; his mere presence at the scene of the crime; and a mere single sale of drugs which, if true, fails to establish his participation in the conspiracy.

▇ Viewed in the light most favorable to the government, a different story emerges. On February 23, 1983, Agent Pavlick met with co-defendant Baker in Boston and arranged for a sample exchange of marijuana. After the exchange with the DEA agents co-defendants Porter and Baker met with co-defendant Reservitz. Reservitz entered a restaurant carrying a brown plastic bag bearing the name "Louis". Reservitz left the restaurant without the bag, and a short time later Hearn left carrying the "Louis" bag. Agent Pavlick testified that that same evening Baker told him that samples were given out.[9] It is appropriate to infer that Hearn, as a representative of a group which was to purchase the marijuana, met with Reservitz to obtain one of the samples given out or being given out. On February 24, 1983, Baker told Pavlick that everything was all set. Next day Pavlick met with Baker and Reservitz and arranged for the transfer of the down payment to the DEA agents and of the marijuana to the defendants. To view the money, upon instructions of Reservitz, Pavlick got into a car with Willis and Hearn. He sat behind Hearn and Hearn proceeded to search him. They drove to a parking lot, where he was shown the money which was inside the trunk of a Cadillac. In light of those ac-

---

**9.** Hearn tries to discredit Pavlick's testimony by alleging that in the report he filed after defendant's arrest Pavlick stated that Baker informed him that the samples "were going to be given

out." However, the transcript reveals that the words used were not "were going to be given out", but "were then being passed out."

tions, Hearn's innocent story of being a "bodyguard" or "babysitter" to the money is inherently unbelievable. *See, e.g., United States v. Smith, supra.* We conclude that the evidence of Hearn's activity was basis enough from which a reasonable person could find that Hearn had the requisite intent to agree to the conspiracy as charged. The court properly denied Hearn's motion for acquittal.

### C. *Bruton*

Hearn also assigns as error the court's denial of the motion for severance on grounds that the admission into evidence by the trial court of a statement made by co-defendant Porter [10] to Agent Fencer violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ It is well established that the Supreme Court's prohibition in *Bruton* against the use of a non-testifying defendant's extrajudicial statements inculpating a co-defendant in a joint trial is not applicable to a situation in which the extrajudicial statement makes no reference to the co-defendant. *United States v. DiGregorio,* 605 F.2d 1184, 1190 (1st Cir.1979), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. Cleveland,* 590 F.2d 24, 28–30 (1st Cir.1978); *United States v. Brooklier,* 685 F.2d 1208, 1218 (9th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *United States v. Webster,* 734 F.2d 1048, 1054, n. 6 (5th Cir.), *cert. denied, Hoskins v. United States,* —— U.S. ——, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *United States v. Guilette,* 547 F.2d 743 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Stewart,* 579 F.2d 356 (5th Cir.1978), *cert. denied,* 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978).

■ An examination of the record reveals that Porter's extrajudicial statement did not inculpate Hearn. The statement made no mention of Hearn nor even suggested Hearn's participation in the marijuana deal. The motion for severance grounded on *Bruton* was properly denied.

### D. *Prejudicial Variance and Improper Spillover*

Appellant Hearn argues that prejudicial variance occurred when the government allegedly offered evidence as to conspiracies that were not contained in the indictment.

■ Appellant claims that the evidence of co-defendant Walter Baker's previous drug dealings and of the pattern of Baker's dealings with the undercover agents and the informant González constituted evidence of multiple conspiracies. However, the evidence about Baker's previous drug dealings was not introduced to show other conspiracies as such. Rather, it was presented to disprove Baker's defense of entrapment. The government was permitted to introduce evidence of Baker's drug dealings and of the two-month history of his negotiations with undercover agents and the DEA informant leading to the actual transaction to show that Baker was predisposed to commit the crime and that the government agents did not induce him to do so. Thus, this did not constitute a prejudicial variance. *Cf., United States v. Scanlon,* 640 F.2d 144 (8th Cir.1981), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981).

■ Furthermore, there was no impermissible "spillover" of evidence in this case. The government did not and could not link Hearn to other conspiracies beyond that charged in the indictment because, as we stated before, Baker's previous drug dealings were not introduced to show other conspiracies. *Cf., United States v. George, supra.* In fact, one conspiracy was charged and one was proven. Moreover, the trial court adequately instructed the

---

**10.** Special Agent John Fencer testified that, after Porter's arrest, Porter stated the following: "he was only a tester for the marijuana. In fact, he did stop at Store 24, in Kenmore Square, and purchased some papers for tobacco to put the marijuana in, and he stated that he did in fact test the marijuana. He also stated that he would be less than candid if he didn't state that he knew there was a big deal going on concerning a marijuana transaction."

jury at the time the evidence was admitted that they were to consider it as to Baker only. *United States v. Moosey*, 735 F.2d 633, 635 (1st Cir.1984).

E. *Failure to Instruct on Theory of Defense*

Lastly, Hearn argues that the district court erred in refusing to instruct the jury on his theory of defense.

Hearn's theory of defense is that he was merely safeguarding a sum of money and that he had no knowledge of the conspiracy instigated by co-defendant Baker and the DEA.

■ The district judge charged the jury very carefully and thoroughly on the elements of a conspiracy. Among other things, he stressed the importance of finding that each of the defendants were parties to an agreement to achieve an unlawful object, and that each defendant did it knowingly, did it wilfully, did it intentionally and not by ignorance, accident nor mistake. The court stressed: "So, in order to find a person liable for the crime of conspiracy you would have to find that that person knew that a conspiracy existed and voluntarily entered into it with the intent of achieving the illegal object of the agreement."

We find that the instructions given were correct and covered the substance of Hearn's request. The trial judge did not deprive defendant of his Sixth Amendment right to a fair and impartial trial.

The judgment is vacated as to co-defendant Porter and remanded to the district court for further proceedings consistent hereof. As to the remaining co-defendants, the judgment of the district court is affirmed.

LEVIN H. CAMPBELL, Chief Judge (dubitante).

This court's ruling that the agents were required to stop questioning Porter after he tried unsuccessfully to call his attorney is not as obvious a proposition as the opinion suggests.

There are two hurdles that must be crossed before this result can be reached. First, without a finding by the court below that an agent actually overheard Porter's attempt to reach his lawyer, this court might be accused of engaging in unwarranted fact-finding by assuming such was the case. Second, even if the agent overheard the conversation, was the conversation by itself enough to constitute an invocation by Porter of the right to the presence of counsel, such as to trigger an *Edwards* analysis?

As to the first issue, while the question is very close, I think the court can properly infer, as it does, that the agents must have been aware that Porter was trying to telephone his attorney. The small size of the room, the admitted fact that an agent was present during the calls, the stipulation that a message was left for Attorney Stolzberg, and the judge's finding that Porter called information to secure the number of his attorney, all point to the obvious conclusion that the agent in the room overheard Porter's attempts to reach a lawyer. While a finding by the district court would have been desirable, we do not reach out unduly by making the finding ourselves.

The answer to the second question—whether Porter's mere telephone call, even if overheard by the police, constituted an invocation of the right to counsel for purposes of the *Edwards* rule—is more difficult. The *Miranda* line of cases provides little guidance on this specific issue because those cases involved situations where the defendant in some way affirmatively expressed a desire to the police to secure the presence of counsel before continuing to talk. *See, e.g., Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) ("I do want an attorney before [this questioning] goes much further"); *Edwards v. Arizona*, 451 U.S. 477, 478, 101 S.Ct. 1880, 1881, 68 L.Ed.2d 378 (1981) ("I want an attorney before making a deal"); *Frazier v. Cupp*, 394 U.S. 731, 738, 89 S.Ct. 1420, 1424, 22 L.Ed.2d 684 (1969) ("I think I had better get a lawyer before I

talk any more. I am going to get into trouble more than I am in now.").

While the above cases do not shed light on whether the police's mere overhearing of an unsuccessful call to counsel is enough, they do suggest that a defendant should at least verbalize *some* desire that he receive the help of an attorney before he answers any further questions. *See, e.g., Edwards,* 454 U.S. at 482, 485, 101 S.Ct. at 1883, 1885 (*Edwards* rule applies where right to counsel "clearly asserted" or "specifically invoked"); *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966) ("If the individual *states that he wants an attorney,* the interrogation must cease until an attorney is present.... If the individual cannot obtain an attorney *and* he indicates that he wants one *before speaking to police,* they must respect his decision to remain silent.") (emphasis added).

Only two lower courts seems to have addressed the issue of when efforts to contact an attorney, unaccompanied by any direct assertion to police of the desire to have counsel present, amount to an invocation of the right. In *United States v. Lilla,* 534 F.Supp. 1247 (N.D.N.Y.1982), the district court found that one defendant's request to his mother to reach his attorney by telephone was a "specific[ ] exercis[e]" of his right to counsel. *Id.* at 1279. The court then found that a second defendant had "explicitly invoked his right to counsel by attempting to contact his attorney directly, and by arranging for his mechanic to reach his attorney." *Id.* at 1280.

By contrast, the district court in *Gorel v. United States,* 531 F.Supp. 368 (S.D.Tex. 1981), found that, although the defendant apparently attempted to reach an attorney, and police officials knew of his attempts, the attempts were "in no sense equivocal requests [for legal assistance] or efforts to obtain present assistance" and thus *Edwards* was not applicable. *Id.* at 370. The court relied on earlier Fifth Circuit cases that founded the following rule for dealing with confusing or ambivalent requests for counsel:

> whenever even an equivocal request for an attorney is made by a suspect during custodial interrogation, the scope of that interrogation is immediately narrowed to one subject and one only. *Further questioning thereafter must be limited to clarifying that request until it is clarified.* When and if it is clarified as a present desire for the assistance of legal counsel, *all* interrogation must cease until that is provided, just as in the case of an initial, unambiguous request for an attorney. And no statement taken after that request is made and before it is clarified as an effective waiver of the present assistance of counsel can clear the *Miranda* bar. Thus, by [this rule,] we avoid attributing a talismanic quality to the word "attorney" falling from a suspect's lips, while at the same time safeguarding his right to the assistance of counsel when he wants it and says so.

*Thompson v. Wainwright,* 601 F.2d 768, 771–72 (5th Cir.1979) (emphasis in original) (defendant announced that he wanted to make a statement but added that he first wanted to tell his story to an attorney). *See also Nash v. Estelle,* 597 F.2d 513 (5th Cir.1979) (defendant stated that he wanted to have a lawyer at some point but would rather talk to the officer immediately). The *Gorel* court concluded from these cases that any mention of an "attorney" is not necessarily an invocation of the right to counsel or even an equivocal request for present representation. It then held that although it would

> indulge a presumption that any effort to contact an attorney is an invocation to the right of present representation by counsel, where conclusions drawn from the totality of the circumstances overwhelmingly rebut this presumption, the court will decline to find *Miranda* violated.

*Gorel,* 531 F.Supp. at 372.

I think the *Gorel* court's rule is only sensible, since there could be situations

where the police act in complete good faith, without realization that the accused had any intention of asserting a right to the immediate presence of counsel. Were we to apply the *Gorel* rule to this case, we would be left with the issue of whether conclusions drawn from the totality of the circumstances here rebut the "presumption" that the defendant, by making abortive efforts to contact an attorney which the police overheard, had invoked the right of present representation by counsel. This would be essentially a factual issue, better resolved initially by the district court than de novo on appeal. I note that the district court found here that Porter, a college and business school graduate who had been well treated by the agents and whose rights had been explained to him, fully realized after failing to reach his attorney by telephone that he had a right to stop the questioning *and nonetheless did not do so.* The court said,

> I'm sure he understood he had a right to stop questioning at any time, and if in fact he was disturbed by the fact that he couldn't have reached his lawyer he could have stopped talking until such time as his lawyer was available to him.

To me, this finding suggests a belief by the judge that Porter, in spite of making the call, never actually meant to invoke his right to counsel since he consciously and knowingly refrained from asserting the right to the police. And if Porter did not, in fact, mean to invoke his right to counsel, an *Edwards* analysis was not required, and the statements made by Porter should not be suppressed.

In sum, I trust this case will not be viewed as creating a per se rule that any time a defendant seeks to contact an attorney, no matter how surreptitiously and ambivalently, he automatically invokes his right to counsel. There surely will be some situations where an accused's failure to make any direct assertion of the right to the police will belie an invocation of the right.