USCA1 Opinion

 

 March 31, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-2324 UNITED STATES, Appellee, v. LUIS DUQUE-RODRIGUEZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Cyr and Boudin, Circuit Judges. ______________ ____________________ William G. Small for appellant. ________________ Jeffrey A. Locke, Assistant United States Attorney, with whom A. _________________ __ John Pappalardo, United States Attorney, was on brief for appellee. _______________ ____________________ ____________________ BREYER, Chief Judge. Luis Duque Rodriguez appeals ___________ from a drug conspiracy conviction, 21 U.S.C. 841(a)(1), and ten year prison sentence. After reading the record in the case, we find his arguments unconvincing, and we affirm the district court. The record would permit the jury to find the following facts: 1. In 1990 the FBI caught a major Colombian cocaine dealer, Pedro Alvarez, who agreed to help the FBI catch others. 2. Alvarez, on FBI instructions, ordered a shipment of about half a ton of cocaine from Colombia. The Colombian dealers sent the cocaine to Massachusetts. They also sent a fax to what (in fact) was an FBI office saying, among other things, that about fifteen pounds of the cocaine was for "Victor," whom Alvarez identified as a New York dealer, Luis Zapata. 3. On June 6, 1991, Alvarez told Zapata about the shipment. 4. Four days later, Zapata hired Duque to drive him to Massachusetts in Duque's van. The two spent the night of June 10 at a Fall River hotel, where Antonio Dillon, an FBI agent (masquerading as Alvarez's associate) had reserved them a room. On June 11, Zapata met Dillon and told him that he had "brought a friend with him to help him take the load back to New York." 5. On the morning of June 12, Dillon, Zapata and Duque met at the hotel. Dillon spoke about other shipments and the need for security. Duque agreed that security was important. Dillon led Zapata and Duque (in Duque's van) to a warehouse. a) A film of the events, supplemented by testimony of two FBI agents who were present, shows that Duque's van backed into the warehouse, Duque got out of the van, watched two men open a white sack, looked at bricks of cocaine inside, waited while Zapata loaded several cocaine bricks into storage compartments built into the rear of the van, took two bricks himself from the bag and put them in a compartment under the passenger's seat, and shut the van door. b) Dillon testified that, during these events, Duque said, "We've been using the van; however, I need to . . . pay for a secret . . . compartment to be put into the van which will hold approximately fifty . . . ." 6. The FBI then arrested Duque and Zapata. Duque makes four arguments on this appeal. First, he says that there was insufficient evidence for the jury to conclude that he knew he was dealing with drugs. He points to his own testimony that Zapata paid him only $1,000 for the trip and to a legal rule that prohibits conviction on the basis of an uncorroborated confession with nothing more. Wong Sun v. United States, 371 U.S. 471, 488-89 (1963). The ________ _____________ jury, however, was free to disbelieve Duque's testimony about his state of mind. It could easily believe that the amount of payment, even if low, was not sufficient to offset -3- 3 other evidence of Duque's knowing involvement. And the record contained much corroboration -- a film showing Duque loading cocaine, for example -- that makes the rule of Wong ____ Sun inapplicable. Cf. United States v. Guerrero-Guerrero, ___ ___ _____________ _________________ 776 F.2d 1071, 1075 (1st Cir. 1985) (jury could have concluded beyond reasonable doubt that members of sailing vessel's crew knew that vessel contained marijuana, in light of reasonable inference that smugglers were counting on crew to unload hundreds of heavy drug-laden sacks on board), cert. denied, 475 U.S. 1029 (1986). ____________ Second, Duque asks us to set aside his conviction on the ground that the government behaved "outrageously." United States v. Russell, 411 U.S. 423 (1973); see also _____________ _______ _________ Hampton v. United States, 425 U.S. 484, 491-95 (1976) _______ ______________ (Powell, J., concurring); id. at 495-500 (Brennan, J., ___ dissenting). Duque should have raised this matter before trial. Fed. R. Crim. P. 12(b)(1), 12(f). But, in any event, the argument is not substantial. Duque rests his argument upon his claim that the government here gave its informer, Pedro Alvarez, more than five hundred pounds of cocaine. Duque points to an FBI agent's testimony that 275.5 kilograms were earmarked for Alvarez himself "as his profit for assisting in the operation," or as "a fee for . . -4- 4 . arranging the transport, importation of the cocaine into the United States." In context, however, this testimony refers to the fact that the Colombian dealers, thinking that Alvarez was a drug broker, told Alvarez that he could keep this amount as a broker's commission. Nothing in the record suggests that the government intended to let Alvarez actually keep the drugs or that he did so. Thus, Duque's argument comes down to a claim that the government was wrong to use the drugs in a "sting" operation. This circuit has made clear, however, that a drug "sting" does not amount to "outrageous" government conduct. United States v. Panitz, _____________ ______ 907 F.2d 1267, 1273 (1st Cir. 1990); United States v. ______________ Porter, 764 F.2d 1, 8-9 (1st Cir. 1985). ______ Third, Duque points out that the district court sentenced him on the basis of nine kilograms of cocaine. He says that the court should have sentenced him on the basis of less than five kilograms. The court, however, could have believed that he intended to transport nine kilograms of cocaine, for Duque saw nine kilograms being loaded into his van. Fourth, Duque argues that the court should have sentenced him as a "minimal," rather than as a "minor" participant. See U.S.S.G. 3B1.2. On our view, however, ___ -5- 5 the court could have believed that Duque's role as a driver was more significant than that of a minor "courier" in a small operation, id. at 3B1.2, comment (nn.1 & 2), ___ particularly since his van seemed to have special compartments that he said he intended to modify to carry larger shipments. We recognize that his comparatively small compensation ($1,000) argues in favor of a greater downward adjustment, but the size of the operation argues the other way. These matters are primarily for the district court, United States v. Figueroa, 976 F.2d 1446, 1461 (1st Cir. _____________ ________ 1992), cert. denied, 61 U.S.L.W. 3584 (U.S. 1993). And, we ____________ can find no legal error in that court's exercise of its judgment. Id. at 1462 (rejecting claim that district court ___ should have found defendant to be "minimal" participant, rather than "minor" one); United States v. Tabares, 951 F.2d _____________ _______ 405, 410 (1st Cir. 1991) (district court's determination that defendant was a "minor" participant rather than "minimal" one not clearly erroneous, where based on reasonable inferences drawn from undisputed facts). We find the appellant's remaining issues without merit. See, e.g., United States v. Zannino, 895 F.2d 1, 17 _________ _____________ _______ (1st Cir. 1990) (issues adverted to in perfunctory manner, -6- 6 unaccompanied by effort at developed argumentation, deemed waived). The judgment of the district court is Affirmed. ________ -7- 7