

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2007

# USA v. Miller

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5413

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Miller" (2007). *2007 Decisions.* Paper 404.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/404

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-5413

———

UNITED STATES OF AMERICA

v.

CHRISTOPHER MILLER,
                                        Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 04-cr-00382
District Judge: Hon. Eduardo C. Robreno

———

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2007

Before: SLOVITER, ALDISERT and ROTH, Circuit Judges.

(Filed September 21, 2007)

———

OPINION OF THE COURT

———

ALDISERT, <u>Circuit Judge</u>.

On May 23, 2005, a jury in the Eastern District of Pennsylvania found Christopher Miller guilty of 16 counts of embezzlement of funds by a bank employee, pursuant to 18 U.S.C. § 656. Miller now appeals his conviction. He contends that the District Court permitted the government to introduce prejudicial evidence in violation of Rules 701 and 1002 of the Federal Rules of Evidence. We conclude that the admission of the evidence in question did not violate Rule 701, but did violate Rule 1002—the "best evidence rule." Nonetheless, we will affirm the judgment of the District Court because the error was harmless.

**I.**

The parties are familiar with the facts and proceedings before the District Court, so we will only briefly revisit them here. On September 20, 1999, Miller began work at the Manoa branch of Sovereign Bank ("Sovereign") in Havertown, Pennsylvania. In the months that followed, at least two bank customers reported significant unauthorized withdrawals from their accounts. Sovereign, in response, launched an internal investigation that uncovered evidence that one or more employees at the Manoa branch made 16 unauthorized withdrawals from customer accounts and embezzled $69,500. The investigation ultimately led to Miller's arrest and indictment on 16 counts of embezzlement.

On May 17, 2005, the case proceeded to trial. The government put forward the

2

following evidence: (1) of the branch's four employees, only Miller was on duty during each and every fraudulent withdrawal; (2) each of the fraudulent withdrawals was accomplished by someone using Miller's teller number and password; (3) according to Sovereign's written policy, Miller would have a password that no one else would know; (4) during an interview with investigators, Miller acknowledged that he processed the transactions at issue;[1] (5) surveillance video indicated that no customers were present at Miller's teller station when he processed nine of the fraudulent withdrawals; (6) no other teller could log into a Sovereign computer while Miller was using his terminal; and (7) surveillance video shows that during four of the fraudulent transactions, Miller's co-workers were not in a position to have processed withdrawals.

The government relied heavily on the testimony of Cindy Wessner, the bank's internal investigator, to build the record. Wessner's wide-ranging testimony touched on her own experience in the banking industry, Sovereign's policies regarding teller passwords, how the Sovereign computer system tracks the contents of each teller's money drawer, the interview she conducted with Miller during her investigation, and the interpretation of the video-surveillance tapes. She also explained that the bank assigned Miller teller number 005, the code associated with all of the fraudulent transactions.

Throughout the trial, Miller objected to the scope and details of Wessner's testimony. Specifically, he complained that Wessner's testimony on the bank's computer

---

[1] Miller, however, denied making the actual withdrawals.

3

system and method of assigning passwords violated Rule 701 of the Federal Rules of Evidence because it was not based on her own perceptions. Miller also argued that Wessner discussed the contents of Sovereign's written policies without submitting a copy of the actual policies, in violation of Rule 1002 of the Federal Rules of Evidence. The District Judge overruled these objections and, on May 23, 2005, a jury convicted Miller of all 16 counts of the indictment. Miller now appeals the evidentiary rulings and asks this Court to vacate the judgment of conviction and grant a new trial.

## II.

We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We review the District Court's decisions under the abuse of discretion standard. See United States v. Pelullo, 964 F.2d 193, 199 (3d Cir. 1992) (stating that where the District Court's rulings are based on a permissible interpretation of the rules of evidence, we review for abuse of discretion).

## III.

Miller first argues that the District Court abused its discretion by admitting lay opinion testimony that violated Rule 701 of the Federal Rules of Evidence. We disagree.

Rule 701 of the Federal Rules of Evidence states,

> If the witness is not testifying as an expert, the witness'
> testimony in the form of opinions or inferences is limited to
> those opinions or inferences which are (a) rationally based on
> the perception of the witness, (b) helpful to a clear
> understanding of the witness' testimony or the determination
> of a fact in issue, and (c) not based on scientific, technical, or
> other specialized knowledge within the scope of Rule 702.

4

In <u>United States v. Polishan</u>, 336 F.3d 234, 242 (3d Cir. 2003), we held that a lay witness "testifying about business operations may testify about 'inferences that he could draw from his perception' of a business's records, or 'facts or data perceived' by him in his corporate capacity." <u>Id.</u> (quoting <u>Teen-Ed, Inc. v. Kimball Int'l, Inc.</u>, 620 F.2d 399, 403, 404 (3d Cir. 1980)).

In the case at bar, Appellant contends that it was improper for Wessner to state that "the defendant was 'the only one who knew' his password." Appellant's Br. 26. Appellant mischaracterizes Wessner's testimony. The relevant testimony discussed knowledge of a hypothetical teller, not Miller. The exchange follows:

> THE WITNESS: Yes, okay.  When you come in the morning, as a teller, you must sign in to your computer terminal. So as soon as he signs in using his teller number and his security password that no one else would know but him it would —
> THE COURT: By "him" you mean whoever the teller may be?
> THE WITNESS: Yes.
> THE COURT: Okay.
> THE WITNESS: Him or her, whichever.

Supp. App. 46.

The admission of Wessner's testimony did not violate Rule 701. Her opinion about teller passwords was based on an inference that arose from her investigation for Sovereign. <u>See</u> Rule 701(a), Federal Rules of Evidence. As in <u>Polishan</u>, 336 F.3d at 242, Wessner's testimony was "based on [her] day-to-day knowledge of . . . her business." Further, the statement was helpful to a determination of a fact in issue, namely, whether or not Miller was the one who processed the fraudulent transactions. <u>See</u> Rule 701(b),

5

Federal Rules of Evidence. Accordingly, the District Court acted well within its discretion when it admitted Wessner's lay opinion testimony.

## IV.

Miller next argues that Wessner's testimony violated Rule 1002 of the Federal Rules of Evidence because she discussed the contours of the bank's written security policies without providing the court with a physical copy of those policies. After a careful examination of the record, we agree that the District Judge exceeded the permissible bounds of discretion in admitting some of the evidence at issue.

Rule 1002, sometimes called the "best evidence rule," states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required . . . ."[2] Courts have interpreted Rule 1002 quite narrowly. A witness, for example, may testify to the existence of a written document without triggering Rule 1002's mandate to produce original documents. Parties also may testify to events or incidents they directly witnessed or experienced, whether or not an original source containing the information is presented at trial. Thus, an informant may testify about a conversation that discussed illegal activities even if a surveillance tape also recorded the conversation. See United States v. Gonzales-Benitez, 537 F.2d 1051, 1053-

---

[2] Rule 1002 typically comes into play in disputes involving copyright infringement, tax evasion, written contracts, pornography, wills and deeds. 31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 7184, at 386-387 (2000). The Rule also may apply in cases where, as here, the written document is not central to the dispute. In such situations, however, its application requires "a more careful consideration." Id. at 388.

1054 (9th Cir. 1976). As the language of Rule 1002 makes clear, a party need only produce original documents if a witness testifies to the actual content of a writing.

**V.**

With these precepts in view, we turn to the case at bar. The parties agree that Wessner testified to the security policies and procedures in place at the Manoa branch during the time of the embezzlement. The government contends that Wessner's discussion did not violate Rule 1002 because she only testified to the existence of a written policy and to the general practices of the bank—policies and practices that she herself helped to develop. We agree with the government that some of the disputed testimony does not violate Rule 1002. For example, the District Court correctly admitted evidence that "a written policy with respect to establishment and maintenance of teller passwords" existed in 1999 and that "there was a written policy with respect to the issuance of keys and combinations to tellers . . . ." Supp. App. 61, 64-65. Wessner's testimony about her role in developing the new company policies also failed to violate Rule 1002's prohibitions.

On a number of occasions, however, the District Court admitted testimony that directly discussed the content of Sovereign's written policies. At one point, Wessner mentioned, "the policy . . . clearly stated" that only tellers knew their passwords. Id. at 63. The court also allowed the government's attorney to ask: "what was the written policy with respect to the assignment of combinations and keys to tellers?" Id. at 65. It is difficult to imagine a more direct violation of Rule 1002. We note that the government

7

easily could have avoided running afoul of the Federal Rules of Evidence by confining its questions to Sovereign's general procedures or Wessner's experiences implementing the policies. However, a party may not discuss the actual substance of a writing without presenting the court with the original document.

<h2 style="text-align:center">VI.</h2>

We will not, however, grant Miller a new trial because we find this error harmless. Rule 52(a) of the Federal Rules of Criminal Procedure states, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." This Court has held that an error is harmless if the record shows "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" United States v. Fallon, 470 F.3d 542, 547 (3d Cir. 2006) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). Finally, we have stated that an "'otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the . . . error was harmless beyond a reasonable doubt.'" Fallon, 470 F.3d at 547 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986)) (alteration in Fallon).

Here, the evidence against Miller is more than enough to support the verdict independent of the testimony violating Rule 1002. In United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996), we held that an admission of testimony that ran afoul of Rule 701(b)'s helpfulness requirement was harmless where the government presented a "mountain of circumstantial evidence supporting" the verdict, and the inadmissible testimony did not contribute to the verdict. Similarly, the government's case against

Miller is supported by ample circumstantial evidence.

As previously noted: (1) of the employees, only Miller was on duty during each and every fraudulent withdrawal; (2) someone using Miller's teller number and password processed each of the fraudulent withdrawals; (3) Miller acknowledged that he processed the transactions at issue; (4) surveillance video indicated that no customers were present at Miller's teller station when he processed nine of the fraudulent withdrawals; (5) no other teller could log into a Sovereign computer while Miller used his terminal; and (6) surveillance video shows that during four of the fraudulent transactions, Miller's co-workers could not have processed withdrawals.

Given the overwhelming strength of the evidence indicating Miller's guilt, the testimony regarding Sovereign's password policy could not have contributed to the verdict. Accordingly, we can confidently say, based on the whole record, that the admission of the testimony in question was harmless beyond a reasonable doubt.

******

We have considered all contentions of the parties and conclude that no further discussion is necessary.

The judgment of the District Court will be affirmed.