UNITED STATES of America, Appellee,

v.

Clarke D. JOHNSON, Defendant, Appellant.

No. 77–1147.

United States Court of Appeals, First Circuit.

Argued Sept. 13, 1977.

Decided Nov. 9, 1977.

William C. Madden, Boston, Mass., by appointment of the court, for appellant.

Charles E. Chase, Asst. U. S. Atty., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and TUTTLE, Circuit Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

Clarke D. Johnson appeals his conviction by a jury on one count of conspiracy to distribute cocaine and three counts of possession with intent to distribute and distribution of cocaine. Appellant's main defense at trial was entrapment. He contends that government agents, acting under cover, badgered him over a period of months, and occasionally even threatened him, finally inducing him to arrange a sale of $100,000 worth of cocaine to them.

■ On appeal, two actions of the district court are assigned as error: [1] (1) its refusal to give the "fundamental fairness" entrapment instruction requested by appellant; (2) its denial of appellant's motion for a new trial based on the contention that appellant was denied a fair opportunity to meet the Government's allegedly false rebuttal testimony.

Appellant claims that in addition to giving the standard entrapment instructions,[2]

---

* Of the Fifth Circuit, sitting by designation.

1. In his appellate brief, appellant also argues that the court below erred by denying without a hearing his pre-trial motion to dismiss the prosecution. That motion had been based on the contention that the statute under which appellant was later convicted was unconstitutional because it "went beyond the valid exercise of the police power of the United States . . . in its improper classification of cocaine as a narcotic. . . ." so far as to be arbitrary and irrational. Further, appellant maintained that he merited a hearing on this issue because the Government had in its possession, but did not submit to the trial court, a "White Paper on Drug Abuse" which, among other things, listed cocaine as a non-narcotic.

There is no merit to these contentions. *See United States v. Foss*, 501 F.2d 522 (1st Cir. 1974). The district court was not required under the Local Rules or for any other reason to hold a hearing before deciding the motion to dismiss. D.C.Mass. R.12(d), (e). The Government's alleged access to the White Paper is irrelevant.

2. The court's comprehensive instructions on entrapment were an extended version of those found at § 13.09 of Devitt and Blackmar, *Federal Jury Practice and Instruction*, (3d ed. 1977). The court said *inter alia*:

"If you find that the acts for which defendant was prosecuted in this case were instigated by government agents and that the defendant had no prior disposition toward making this kind of sale . . . then you should acquit

which focus on a defendant's predisposition to commit the unlawful act, the court should have charged the jury that in some cases the depth of government involvement in the crime committed will be so great as to require a dismissal as a matter of due process, regardless of the defendant's predisposition.[3] He asserts that the substance of the instruction requested was drawn from Justice Powell's concurring opinion in *Hampton v. United States*, 425 U.S. 484, 493, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).

*Hampton* is not an easy case to interpret in view of the lack of a majority opinion. The plurality opinion—maintaining that predisposition was the only issue to consider in assessing an entrapment defense—commanded only three votes. Since both Justice Powell and Justice Blackmun, in a separate concurring opinion, took the position that fundamental fairness might in extreme circumstances require dismissal of a prosecution because of outrageous police conduct, it can be said—counting the three dissenters—that a majority of the Justices would go at least that far. But while, in this sense, Justice Powell's views may be taken as reflecting a current consensus, appellant still must fail in his contentions here, since there is no support in *Hampton* and its predecessors for placing the question of fundamental fairness before the jury. To the contrary, in his dissent in *Hampton*, Justice Brennan quoted Justice Stewart, also dissenting, in *United States v. Russell*, 411 U.S. 423, 441, 93 S.Ct. 1637, 1647, 36 L.Ed.2d 366 (1973), as follows:

> "[T]he determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving

the legality of law enforcement methods—by the trial judge, not the jury."

It is true, of course, that only the dissenters in *Hampton* focus on whether the fundamental fairness defense should go to the jury. The plurality opinion simply holds that there is no such defense, while the concurring Justices, who point to the exceptional case that has not yet been decided, do not discuss whether judge or jury is to pass on the issue when it properly arises. It is possible that the exceptional case, now recognized by a majority of the Court, may be hotly disputed on the facts. For example, the defendant may testify that he was directly threatened by government agents that if he did not commit the crime his wife or daughter might be arrested, or some such thing as that. The government agents might testify that no such conversation ever occurred. Is this issue a fact to be resolved by the trial court or is it to be resolved by the jury? Quite possibly, it should be decided by the trial court just as is a disputed fact issue concerning an allegedly illegal search or seizure. On the other hand, Justice Stewart's language that "the determination of the lawfulness of the government's conduct must be made . . . by the trial judge, not the jury" may contemplate only a ruling on the effect of particular conduct once it has been established.

■ But we need not attempt to resolve this issue here. Under any view, it is the court's province to decide whether defendant's case was such that, if believed, it would fall into the exceptional category mentioned by Justice Powell. If such a

---

the defendant on any count as to which you find that he was lured into . . . commission . . . by repeated and persistent solicitation of federal agents. . . . The defense of entrapment is not available for the purpose of discussion here where a crime was being committed and the officer merely furnished an opportunity for the commission of the crime to someone who would have committed it as soon as the opportunity presented itself."

**3.** Appellant requested the court to instruct the jury that,

"Where there is governmental (police) involvement in criminal activity, predisposition of the defendant is not the only matter to be considered in determining the defendant's guilt or innocence. The concept of fundamental fairness inherent in the constitutional guaranty of Due Process, must be taken into consideration. There is certainly a constitutional limit to allowing governmental involvement in crime. It would be unthinkable to permit government agents to instigate the crimes charged in the indictments in this case merely to gather evidence to convict this defendant."

determination were left to a jury's unguided discretion, as under the instruction proposed here, the entrapment defense as now understood would be transformed into an invitation to twelve jurors to consider in virtually any case whether defendant was treated "fairly". Whatever its possible role in resolving contested factual issues raised by an entrapment defense, the jury is not equipped and should not be permitted to speculate on whether particular facts do or do not amount to fundamental fairness. We hold that the court properly rejected the proposed instruction.

While this ends the precise issue framed by appellant on appeal, we think it appropriate to consider the related question of whether, on this record, the district court should, as a matter of law, have found the existence of such shocking police conduct as to preclude a conviction. Appellant filed a "motion for judgment of acquittal on the ground of entrapment", which argued that "as a matter of law on the evidence in this case the defendant was entrapped by government agents." This motion was denied by the district court, and while appellant does not now contest this disposition we are inclined to treat appellant as having preserved on appeal the question of fundamental fairness in view of his having raised it in the context of the requested instruction.

█ We do not believe the Government's conduct was so outrageous as to render Johnson's conviction unconstitutional. Government involvement in the offense was less than in *Hampton, supra,* or its forebear, *Russell v. United States, supra.* In *Hampton,* the Court upheld a conviction for distribution of narcotics that government agents had both supplied to defendant and bought from him. In *Russell,* government agents had supplied defendants with a somewhat scarce but not contraband chemical that was necessary to manufacture the illicit substance.

In the instant case, the drug was not furnished by the Government. Johnson relied on his own sources to procure $100,000 worth of cocaine for sale to Agents Staffieri and Doyle. To be sure, Johnson testified that he acted in response to demands persisting over a period of months, and also that—as he had sent one agent on a wild goose chase to Florida—the agents applied pressure that became occasionally angered and even threatening. Thus, according to Johnson, Staffieri "lost his temper", or cursed Johnson, and promised that Johnson "would be sorry" if he didn't compensate Staffieri for the cost of the fruitless trip South.

But even accepting Johnson's version as true, the "pressure" he describes seems scarcely the "outrageous conduct" that would cause a majority of the Justices in *Hampton* and *Russell* to join in reversing a conviction on due process grounds. In so concluding we have considered the entire course of the relationship described by Johnson and the agents, the context surrounding the two or three threats Johnson complains of, and the words allegedly used —"you'll be sorry", "you damn well better come through". Johnson might well have expected an angry reaction to the expensive false lead he gave to Staffieri, thinking he was a dealer in narcotics.

Additionally, to the extent that the district court was entitled to rely on its assessment of the witnesses' credibility in ruling on defendant's motion for acquittal, any damage to Johnson's credibility that it perceived would further weaken Johnson's due process argument. The agents drew a much less passive picture of Johnson than Johnson presented in his defense. We are thus unpersuaded that the alleged government misconduct so tainted Johnson's conviction as to render it invalid under the Constitution.

Appellant's second assignment of error is grounded in the court's denial of his motion for new trial. That motion was based on appellant's allegation that he was denied a fair opportunity to refute the Government's rebuttal evidence, which placed him at a "crucial" meeting in Boston on or about November 12, 1973. Appellant claimed that this testimony would be proved false by an examination of his passport, which he ex-

pected would support his statement that he was in Switzerland during all of November of that year. The passport had not been submitted in evidence at trial, but had apparently been surrendered to the court as a condition of bail.

The court below denied the motion for new trial, stating:

"The passport was not offered in evidence during the trial. However, for purposes of this motion, the Court has examined all entries therein and finds that the passport does not support defendant's present contention, and in fact, rebuts defendant's story in part by showing his arrival in the United States on November 2, 1973. It further appears that defendant elected to testify at the trial and that he was present during the testimony about which he now complains, but made no attempt to deny it during the trial."

■ Consideration of a motion for new trial is committed to the sound discretion of the trial court. *United States v. Zannino*, 468 F.2d 1299 (1st Cir. 1972), *cert. denied*, 410 U.S. 954, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973); *United States v. Leach*, 427 F.2d 1107 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970). This court can find no convincing reason to believe that this assessment and disposition of appellant's motion by the trial court constituted an abuse of that court's discretion. In fact, the trial court may have done more than was strictly required of it on such a motion by examining appellant's passport. The appellant had failed of his own accord to respond to the Government's testimony. Appellant makes no claim that he was surprised by the Government's testimony, nor that he was denied an opportunity to present witnesses who would refute that testimony. Nothing in the Government's testimony about the meeting rendered it "so indefinite [that] it gave the defendant no chance or opportunity to refute it", as appellant contends in his brief.

*Affirmed.*