**UNITED STATES of America, Appellee,**

v.

**Amador RODRIGUEZ–RAMOS, Defendant, Appellant.**

**No. 82–1128.**

United States Court of Appeals, First Circuit.

Argued Feb. 10, 1983.

Decided April 1, 1983.

Certiorari Denied June 27, 1983.
See 103 S.Ct. 3542.

Michael J. Guinan, Chicago, Ill., with whom George E. Becker, and Alphonse C. Gonzales, Chicago, Ill., were on brief, for defendant, appellant.

Everett M. De Jesus, Asst. U.S. Atty., with whom Daniel Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant, Amador Rodriguez-Ramos, was convicted of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a) and 846. He argues four bases for reversal: (1) the district court violated his Sixth Amendment right to assistance of counsel when it denied his request for a continuance; (2) it erred in denying his motion to suppress certain evidence; (3) it erred when it denied appellant's motion to dismiss the indictment as based on improper grand jury testimony; and (4) "unreasonable courtship" by government agents violated his Fifth Amendment rights to due process and fundamental fairness. We affirm the conviction.

## I. Request for a Continuance

At a November 2, 1981 status conference appellant's trial was set for December 8, 1981 with a pretrial conference on November 30, 1981. On November 12 appellant filed a motion to continue the trial date, alleging that discovery had not been completed, thus delaying the preparation of pretrial motions, and that lead counsel for appellant was expected to be in trial on

December 8 in Brownsville, Texas. Appellant further alleged in that motion that postponement of the trial would "create no difficulty under provisions of the Speedy Trial Act." The motion was granted on November 24, the court noting that "[t]he prior setting of this case conflicts with two other criminal cases set for December 9 and 10, 1981 before the undersigned"; the trial date was reset for December 21, 1981.

Appellant's case was subsequently transferred to another judge who, on December 4, reset the case for trial on December 14, 1981. According to an affidavit of one of appellant's counsel, his office received notice of the transfer of the case and the change of trial date on the previous afternoon, December 3. Appellant's counsel aver on appeal, however, that they did not learn personally of the advancement of the trial date until December 7.

On December 8 appellant filed a "motion to modify the trial date" which was signed by his local Puerto Rico counsel, averring that his local counsel was scheduled to begin trial in another case on the same date, that appellant's lead counsel was scheduled to appear on December 14 at a suppression hearing in Los Angeles, and that a third, associate, counsel did not have the necessary experience to try the case. That motion requested that the trial be put off until December 16 or, alternatively, that jury selection begin on December 15 but that the trial thereafter not be resumed until December 16. That motion was denied in a handwritten order at its foot.

> "Denied. This is a criminal trial in which the Speed [sic] Trial Act date is about to expire and this takes precedence over all matters. Considering that at least one of defendant's multiple counsel are available for trial on December 14, 1981, that trial setting stands firm."

On December 10 appellant also filed a "motion for continuance", which was signed by his lead counsel, requesting "a continuance in this cause [sic] because his attorney will be involved with another case on the trial date set by this court and to order Defendant to go to trial on that date or any date before December 21, 1981 would violate his due process rights because his attorney will not be adequately prepared for his defense." We find no indication in the record of separate action by the court on that motion.

On December 14 the case was called for trial. Appellant's associate counsel appeared on his behalf and renewed his motion for a continuance. The court put off selection of a jury and commencement of trial to the following day, but heard argument on pending pretrial motions. The trial commenced the following day with appellant's lead counsel, associate counsel, and local counsel all present. Lead counsel reiterated that he was not prepared for the case.[1]

Appellant argues that the trial court abused its discretion in denying his request for a continuance, thus unconstitutionally burdening his right to representation by counsel. Though appellant's request for a continuance appears to have had sufficient merit to warrant the trial judge's reasonable scrutiny, and though the trial judge's stated reason for denying the motion may have been in error, any burden on appellant's right to counsel did not reach constitutional dimensions.

In denying appellant's motion to modify the trial date, the trial judge indicated that "the Speed [sic] Trial Act date is about to expire and this takes precedence over all matters." Since appellant was not arraigned until November 10, only 35 days before the scheduled trial date, the requirements of the Speedy Trial Act would not appear to have been pressing. *See* 18 U.S.C. § 3161.[2] In addition, delay resulting

---

1. Appellant's motion for a continuance was joined at that time by his codefendant.

2. Appellant's codefendant was arraigned at an earlier date—October 1. But any time problem with respect to him would seem to be cured by

18 U.S.C. § 3161(h)(7), which excludes "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." Indeed, the codefendant, at the commencement

from a continuance when the court finds "that then ends of justice served by such action outweigh the best interest of the public and the defendant in a speedy trial", is excludable from the time requirements of the Act. 18 U.S.C. § 3161(h)(8)(A).

Nonetheless, we find that any burden on appellant's right to representation by counsel resulting from the denial of his motion for a continuance was minimal. Trial in the case was originally set for December 8. Appellant was represented by three attorneys. Appellant's lead counsel and associate counsel filed a notice of appearance on November 12. He was also represented prior to that time and throughout by local counsel. Open file discovery was given in the case, and full disclosure had been made to appellant by November 30. Appellant's associate counsel was present on December 14 to argue pretrial motions. All three of appellant's counsel were present on December 15 when jury selection and trial began and for the remainder of the trial.

Appellant argues that his rights were prejudiced by having only inexperienced counsel present to argue pretrial motions and because his lead counsel did not have adequate time to prepare for trial. He does not, however, point to specific ways in which his defense might have been improved by more time or the presence of lead counsel at argument on pretrial motions. *See United States v. Waldman,* 579 F.2d 649, 653 (1st Cir.1978).

In extreme circumstances it can be assumed that a combination of inadequate time to prepare and inexperienced counsel will result in ineffective assistance. We found such circumstances in *Rastrom v. Robbins,* 440 F.2d 1251 (1st Cir.), *cert. de-*

*nied,* 404 U.S. 863, 92 S.Ct. 53; 30 L.Ed.2d 107 (1971), when counsel without prior trial experience was called upon to begin trial in four hours. *There are no such extreme circumstances here.*[3]

Appellant's "motion to modify trial date" —made by experienced, local counsel— asked that the trial begin on December 16 in order that appellant's lead counsel could return from Los Angeles. Lead counsel was in fact present on December 15. Only jury selection and opening arguments took place on that day. It is true that appellant's concurrent "motion for continuance" —made by lead counsel—asked for a continuance to December 21 in order to allow adequate preparation time. But we cannot say, in the face of such contradictory motions from multiple counsel, that the trial judge erred either in not responding to that motion or in concluding that appellant would be adequately represented on the scheduled trial date.

In addition, there is no indication in the record that appellant was not adequately represented by associate counsel at argument on pretrial motions. On the motion perhaps most crucial to appellant's defense (and which is made a subject of this appeal), his motion for suppression of evidence, the trial judge reserved his ruling and allowed for further testimony and argument, which was conducted by appellant's lead counsel on the third day of trial.

We conclude that the court's denial of appellant's motion for continuance of the trial date did not violate his Sixth Amendment right to counsel.

## II. *Motion for Suppression*

The prosecution presented evidence at appellant's trial to show that appellant con-

---

of trial on December 15, joined appellant's motion for continuance, pleading lack of adequate preparation time.

Despite his several motions for continuance and his affirmations in so moving that continuance would create no Speedy Trial Act problems, appellant, with formidable temerity, filed a written motion on December 17, the third day of trial, moving for dismissal of the indictment on the grounds that the Speedy Trial Act had been violated. That motion was denied with-

out comment. That denial has not been appealed.

3. Appellant's reliance on *United States v. Lespier,* 558 F.2d 624 (1st Cir.1977), is misplaced. In that case the associate counsel's "refusal to undertake the most ordinary tasks of advocacy" at trial "left the defendants without even the pretense of a competent defense." 558 F.2d at 629. Here, as we have noted, any impact on the defense was much less severe.

spired to exchange a house that he owned in Puerto Rico for a quantity of cocaine which he intended to distribute. It introduced a deed to appellant's house which appellant allegedly brought to a meeting with undercover drug agents and intended to exchange for cocaine.

That deed was discovered through the warrantless search of a travel bag which was carried by appellant's female companion at the time of his arrest. Finding that the travel bag belonged to appellant's traveling companion, the trial court ruled that appellant had no standing to seek suppression of the deed.

Appellant bears the burden of showing that he had an expectation of privacy in the travel bag and thus standing to challenge the legality of its search. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). Appellant testified that the bag belonged to him and that he gave it to his traveling companion to carry so that he could carry a larger piece of luggage also belonging to him. In the case of luggage—"a common repository for one's personal effects, and therefore . . . inevitably associated with the expectation of privacy", *Arkansas v. Sanders,* 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979)—an expectation of privacy can be inferred based on assertion of ownership. *United States v. Goshorn,* 628 F.2d 697, 700 (1st Cir.1980). Nor is the expectation of privacy defeated by giving luggage to a traveling companion to carry. *See United States v. Canada,* 527 F.2d 1374, 1378 (9th Cir.1975), *cert. denied,* 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976); *United States v. Lonabaugh,* 494 F.2d 1257, 1262 (5th Cir. 1973).

But the trial judge here did not credit appellant's testimony and concluded that the bag belonged to his companion. We cannot say that that conclusion was clearly erroneous. Fed.R.Civ.P. 52(a). Appellant admitted on cross examination that the travel bag contained personal belongings "such as cosmetics and items of feminine use" belonging to his companion. Though claiming that he also had personal belong-

ings in the bag other than the deed, when asked what they were, appellant could only identify, "Two thousand dollars and a camera belonging to Ms. Ruiz [his traveling companion]." Based on that testimony and on the fact that she was carrying the bag, the trial judge could conclude, as he did, that the bag belonged to appellant's traveling companion and that she was using it at the time to carry her personal belongings.

That does not in itself make an end of the matter. There are circumstances in which the relationship between the traveling companions, the conditions of the bailment, or the precautions taken to maintain privacy could substantiate an expectation of privacy on the part of a traveler who deposits personal possessions in a companion's traveling bag. *See Rawlings v. Kentucky, supra,* 448 U.S. at 105, 100 S.Ct. at 2561. But the burden is on appellant to establish such circumstances. He has failed to carry that burden.

Appellant argues further that even if he did not have an expectation of privacy in the travel bag, he had an expectation of privacy in the envelope containing the deed. Testimony showed, however, that appellant had previously shown the envelope to undercover agents indicating that the deed was inside and that the envelope was not sealed. We cannot say under these circumstances that appellant had an expectation of privacy in an unsealed envelope contained in a bag in which he had no expectation of privacy.

### III. *Grand Jury Testimony*

After jury selection but before the presentation of any evidence, appellant moved to dismiss the indictment as based on misleading hearsay testimony. Arguing that the grand jury was misled by the testimony of a drug enforcement agent into believing that that agent had eyewitness knowledge of the events about which he testified, appellant contends that that motion should have been granted. He relies on a supervisory rule to that effect announced by the Second Circuit in *United States v. Estepa,* 471 F.2d 1132, 1136–37 (2d Cir.1972). *Cf.*

*United States v. Cruz,* 478 F.2d 408, 411 (5th Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973) (in absence of some showing that integrity of grand jury proceedings has been compromised indictment will not be overturned on appeal).

■ But even were we to adopt such a supervisory rule, we would find no application in this case. Reviewing the entire testimony of the drug enforcement agent, we simply find no implication that he was giving an eyewitness account. The agent was, in fact, careful to identify by name those agents upon whose eyewitness information his testimony depended.

## IV. *Governmental Involvement and Due Process*

Although appellant concedes that a review of the evidence in the light most favorable to the government indicates his predisposition to commit the crime charged and that he may not, therefore, raise the defense of entrapment, *see Hampton v. United States,* 425 U.S. 484, 489–90, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976); *United States v. Russel,* 411 U.S. 423, 435–36, 93 S.Ct. 1637, 1644–45, 36 L.Ed.2d 366 (1973), he argues that "unreasonable courtship" on the part of government agents violated his right to due process and fundamental fairness under the Fifth Amendment. He points to the fact that his meetings and telephone conversations with government agents which formed the basis of the conspiracy charges against him were instigated by the agents, and argues that such affirmative steps by government agents to bring about an unlawful agreement should bar a conviction for conspiracy.

It is true that the decisions of the Supreme Court have left open the possibility that "outrageous" police involvement in a crime may violate a defendant's right to due process despite his predisposition to commit the crime. *See Hampton, supra,* 425 U.S. at 492–93, 96 S.Ct. at 1651 (Powell, J., concurring); *see also United States v. Johnson,* 565 F.2d 179, 181 (1st Cir.1977), *cert. denied,* 434 U.S. 1075, 98 S.Ct. 1264, 55 L.Ed.2d 780 (1978) (interpreting the effect of the multiple opinions in *Hampton* ). In taking that position in his concurrence in *Hampton,* Justice Powell emphasized, however, that,

"[T]he cases, if any, in which proof of predisposition is not dispositive will be rare. Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction. This would be especially difficult to show with respect to contraband offenses, which are so difficult to detect in the absence of undercover Government involvement." *Hampton, supra,* 425 U.S. at 495 n. 7, 96 S.Ct. at 1653 n. 7.

This is not such a case.[4]

Post-*Hampton* cases finding government involvement so pervasive or outrageous as to violate due process have indeed been rare. We are aware of only one—*United States v. Twigg,* 588 F.2d 373 (3rd Cir.1978). In that case government agents suggested the establishment of a drug laboratory, provided all necessary equipment and expertise, and ran the operation with some assistance from the defendants. Another court has suggested that an 'inactive participant" in a government-instigated scheme, though predisposed, might successfully raise a due process defense. *United States v. Tobias,* 662 F.2d 381, 387 (5th Cir.1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed. 1317 (1982).

■ Here there was ample evidence that appellant actively and eagerly conspired with government agents and others to obtain cocaine with the intention of distributing it. We do not find indicia of govern-

---

4. Appellant, in fact, concedes that this is not a case involving outrageous police conduct, but argues that the involvement of police in the charged crime nonetheless violated his due process rights: "This case is neither one of entrapment nor outrageous police conduct. The unreasonable courtship of the appellant by government agents falls somewhere in between the two recognized defenses." Whatever is meant by "unreasonable courtship", if it does not constitute "police overinvolvement in crime" which "reach[es] a demonstrable level of outrageousness" it will not bar a conviction even in the view of the concurrers in *Hampton.*

ment involvement more pervasive or outrageous than that which has passed muster in *Hampton* itself (government both supplied and purchased contraband substance) and subsequent cases. *See, e.g., United States v. Parisi,* 674 F.2d 126 (1st Cir.1982) (illegal purchase of discount food stamps made from government agents); *United States v. Gray,* 626 F.2d 494 (5th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980) (government agents suggested smuggling scheme to defendants and provided them with repair services, an airstrip and a crew); *United States v. Leja,* 563 F.2d 244 (6th Cir.1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978) (government provided necessary chemicals and technical instruction for manufacture of controlled substance); *United States v. Johnson, supra* (defendant sold cocaine in response to agents demands and threats persisting over a period of months).

*Appellant's conviction is affirmed.*